FILED
CLERK

March 23, 2023

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
MARTIN J. WALSH, Secretary of Labor,
United States Department of Labor,

               Plaintiff,

       -against-

VERSA CRET CONTRACTING COMPANY, INC.,
ORLANDO MARTINS, Individually and as Officer,
and CECILIA MARTINS, Individually and as Officer,

            Defendants.
-------------------------------------------------------------------X

**ORDER**

21-CV-5697 (JMA) (JMW)

**A P P E A R A N C E S:**

Hollis Virginia Pfitsch, Esq.
**U.S. Department of Labor**
Employment Law Unit
201 Varick Street, Room 983
New York, NY 10014
*Attorney for Plaintiff*

Jordan Laris Cohen
**Office of the Solicitor, U.S. Department of Labor**
New York Regional Office
201 Varick St., Rm 983
New York, NY 10014
*Attorney for Plaintiff*

Saul D. Zabell, Esq.
Diana Marie McManus, Esq.
**Zabell & Collotta, PC**
One Corporate Drive, Suite 103
Bohemia, NY 11716
*Attorneys for Defendants*

**WICKS,** Magistrate Judge:

> *"The art and science of asking questions is the source of all knowledge."*[1]

Plaintiff, Secretary of Labor, commenced this action pursuant to the Fair Labor Standards Act ("FLSA"), to restrain Defendants from obstructing the Secretary's investigation into Defendants' FLSA violations and retaliating against cooperating employees, as well as to recover back wages and liquidated damages. (DE 1.) The present discovery dispute between the parties is the latest of many in this case. The dispute concerns the assertion of manifold privileges by Plaintiff's counsel during the depositions of four non-party witnesses. (DE 43; DE 44; DE 51.) Over the course of four separate depositions, Defendants' counsel objected to twenty-two questions, invoking three distinct privileges, namely, the law enforcement privilege, the informant's privilege, and the attorney-client privilege. (DE 43; DE 44; DE 51.) Each of the questions and the privileges relied upon by Plaintiff are set forth in Appendix A to this Order.

On January 18, 2023, during the deposition of non-party witness, Gene Toledo, Wage and Hour Investigator, Defendants' counsel called the Court to resolve a deposition dispute. (Electronic Order, dated Jan. 18, 2023.) The parties were directed to resume the deposition, move on to other topics, and to submit letter briefs outlining the disputed questions, the specific privileges, and the parties' arguments. (DE 43; DE 44; Electronic Order, dated Jan. 18, 2023.) The parties later called again for a ruling concerning similar issues, but this time in anticipation of the deposition of Wage and Hour Assistant District Director, William Dempsey, which was scheduled to take place the very next day on January 19, 2023. (*Id.*)

On February 16, 2023, the parties found themselves in yet another deposition kerfuffle. During the depositions of Wage and Hour Investigators Nicole Stahl and Tricia Prepetit, Plaintiff

---

[1] Thomas Berger, American novelist.

asserted certain privileges and again directed each deponent not to answer.  The parties also briefed these questions.  (DE 51.)  Defendants seek to compel non-party witnesses Gene Toledo, William Dempsey, Nicole Stahl and Tricia Prepetit to respond to the subject questions.  Plaintiff, in turn, seeks a protective order.

 For the reasons set forth below, Defendants' Motion to Compel (DE 43; DE 51) is **DENIED** and Plaintiff's Cross-Motion for a Protective Order (DE 44; DE 51) is **GRANTED** with respect to the subject questions.[2]

## THE STANDARD

Rule 26 of the Federal Rules of Civil Procedure governs the scope of discovery.  Pursuant to Fed. R. Civ. P. 26:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).

Information "is relevant if: '(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.'"  *Vaigasi v. Solow Mgmt. Corp.*, No. 11-CV-5088, 2016 WL 616386, at *11 (S.D.N.Y. Feb. 16, 2016) (quoting Fed. R. Evid. 401).  This standard is applied more liberally during discovery than at trial.  *Id.*  Permissible discovery under Rule 26 must be relevant "to any party's claim or defense," and "proportional to the needs of the case."  *Pothen v. Stony Brook Univ.*, No. 13-CV-6170 (JFB) (AYS), 2017 WL 1025856, at *3 (E.D.N.Y. Mar. 15, 2017) (citing Fed. R.

---

[2] The Court reserves decision and will issue a separate Order on the issues pertaining to Stahl and Prepetit's review of documents prior to each of their respective depositions.

Civ. P. 26(b)(1)).  Proportionality goes "hand-in-hand" with relevance and so the more relevant

the information sought is, the less likely a court would find the subject discovery

disproportionate.  *New Falls Corp. v. Soni*, No. 16-CV-6805 (ADS) (AKT), 2020 WL 2836787,

at *2 (E.D.N.Y. May 29, 2020).

"[A] court may, for good cause, issue an order to protect a party or person from

annoyance, embarrassment, oppression, or undue burden or expense . . . ."  Fed. R. Civ. P.

26(c)(1); *see Gordon v. Target Corp.*, 318 F.R.D. 242, 246 (E.D.N.Y. 2016) ("[T]he touchstone

for determining whether to issue a protective order under Rule 26(c) lies, in the first instance, on

a party's ability to establish good cause.").  "Rule 26(c) confers broad discretion on the trial

court to decide when a protective order is appropriate and what degree of protection is required."

*Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).  The burden is on the party seeking the

protective order to show "good cause: through 'particular and specific facts' as opposed to

'conclusory assertions.'"  *Rofail v. United States*, 227 F.R.D. 53, 54-55 (E.D.N.Y. 2005).  "If the

movant establishes good cause for protection, the court may balance the countervailing interests

to determine whether to exercise discretion and grant the order."  *Id.* at 55.

Seeking a protective order to prevent disclosure of privileged material is the appropriate

procedural course.  *See, e.g.*, *Sec. of Lab. v. Superior Care*, 107 F.R.D. 395, 398 (E.D.N.Y.

1985) (granting a protective order because defendant had other means to prepare for trial);

*Galvin v. Hoblock*, No. 00-CV-6058 (DAB) (MHD), 2003 WL 22208370, at *7-8 (S.D.N.Y.

Sept. 24, 2003) (granting, in part, a protective order as to the privileged documents because

defendant had not shown a compelling need to overcome the privilege).

## DISCUSSION

Plaintiff's directives to the witnesses not to answer are all predicated on the assertion of

several distinct privileges.  Thus, it is Plaintiff who bears the burden to establish the existence

4

and applicability of each privilege.  *See von Bulow by Auersperg v. von Bulow*, 811 F.2d 136, 146 (2d Cir. 1987) ("The law is clear in this circuit that a person claiming the attorney-client privilege has the burden of establishing all the essential elements thereof."); *In re The City of New York*, 607 F.3d 923, 945 n.23 (2d Cir. 2010) ("The ultimate burden of demonstrating the law enforcement privilege is on the party asserting the privilege.").

The tripartite privileges asserted by Plaintiff are the: (1) informant's privilege; (2) law enforcement privilege; and (3) attorney-client privilege.  The relevant legal standards for the informant's privilege and the attorney-client privilege are laid out in the Court's prior Orders and are incorporated here by reference.  (*See* DE 26 at 5-12 (discussing informant's privilege, and attorney-client privilege).)  As to the law enforcement privilege, however, it

> is a qualified privilege which establishes a presumption against disclosure for information (1) pertaining to law enforcement techniques and procedures, (2) that would undermine the confidentiality of sources, (3) that would endanger witnesses and law enforcement personnel, (4) that would undermine the privacy of individuals involved in an investigation, or (5) that would seriously impair the ability of a law enforcement agency to conduct future investigations.

*Morales v. United States*, No. 18-CV-4247 (CBA) (RER), 2020 WL 6799681, at *2 (E.D.N.Y. Nov. 19, 2020) (quoting *In re The City of New York*, 607 F.3d at 948).

"The presumption against disclosure may be overcome by a party demonstrating that (1) its suit is non-frivolous, (2) the information is not available elsewhere, and (3) the party has a compelling need for the information."  *Id.* at 2.  Where such a showing is made, the court must weigh the interests in favor of and against "disclosure to determine whether the information should be disclosed."  *Id.*

Where the party asserting the law enforcement privilege has already commenced the action like here, courts have substituted the first requirement for a showing that the party seeking disclosure "seeks the discovery in good faith."  *See F.T.C. v. Timeshare Mega Media and*

*Marketing Group, Inc.*, No. 10-CV-62000, 2011 WL 6102676, at *5 (S. D. Fla Dec. 7, 2011)

(construing this requirement as a general one of good faith where the FTC initiated the initial

action).

**A.  Questions 1-8 of Gene Toledo's Deposition, Question 1 of William Dempsey's Deposition, Questions 1-4 of Nicole Stahl's Deposition and Question 1 of Tricia Prepetit's Deposition Invoking the Law Enforcement Privilege and the Informant's Privilege**

Plaintiff contends that both the law enforcement privilege and the informant's privilege

apply to Questions 1 through 8 of Gene Toledo's Deposition, Question 1 of William Dempsey's

Deposition, Questions 1-4 of Nicole Stahl's Deposition and Question 1 of Tricia Prepetit's

Deposition.  Defendants counter that the Plaintiff has failed to properly invoke the law

enforcement privilege and that the informant's privilege does not apply to the questions at issue.

Here, Plaintiff has failed to meet his burden of proving that the law enforcement privilege

applies to the subject questions.  Plaintiff attempts to meet his burden by arguing that the

initiation of WHD's investigation "'pertains to law enforcement techniques and procedures'; its

release also may 'undermine the confidentiality of sources,' 'endanger witness[es],' or 'interfere

[] with an investigation.'"  (DE 44 at 2; DE 51 at 10.)  But this argument is insufficient alone.

In *Coleman*, the court found that the defendants' argument that the law enforcement

privilege should apply because "the information in the [IAU] [R]eport concerns law enforcement

techniques and procedures, information that would undermine the privacy of individuals

involved in the investigation and, if revealed beyond the parties, would seriously impair the

ability of law enforcement agencies to conduct future investigations" was  "merely a restatement

of the of the type of information the privilege is meant to protect."  *See Coleman v. Cnty. of*

*Suffolk*, 174 F. Supp. 3d 747, 757 (E.D.N.Y. 2016), *aff'd*, 685 F. App'x 69 (2d Cir. 2017).

Similarly, here, Plaintiff's argument is a mere description of what the law enforcement privilege protects without more.  Plaintiff also has not made a "'clear and specific evidentiary showing' of the harm that would occur should the [information] be disclosed." *Id.*  Since Plaintiff has failed to carry his burden,  this Court need not reach the issue of whether Defendant has established a compelling need for the information regarding how the investigation began.

Nonetheless, the informant's privilege *does* apply.  Plaintiff asserts that responses to these questions "may tend to reveal the identity of any individuals involved as confidential informants."  (DE 44 at 2; DE 51 at 10.)  Plaintiff further contends that Defendants cannot meet their burden of demonstrating how the initiation of the investigation is essential to their defense. (DE 44 at 2; DE 51 at 10.)  Finally, Plaintiff notes that it has produced the case file, which includes all the facts gathered that lead to the initiation of the investigation.  (DE 44 at 3; DE 51 at 10.)

Defendants contend that they "have not sought the identity of any witness or informant in either deposition."  (DE 43 at 1; DE 51 at 1.)  Instead, Defendants claim that "responses to the questions at issue would reveal only how the investigation began, timing of witness statements and interview, personal opinions of the deponent, and information completely unrelated to witnesses altogether."  (DE 43 at 1-2; DE 51 at 1.)  The Court disagrees.

To conclude otherwise would allow one to do indirectly what cannot do directly.  In their own letter brief, the Defendants reference this Court's previous finding that the informant's privilege is not restrained simply to questions regarding the identity of informants.  (*See* DE 43 at 1 ("[T]his Court has opined 'the privilege applies to the informant's identity only and not the substance of the informants communications . . .' *unless disclosure of the contents is likely to reveal the identity of an informer.*") (internal citations omitted) (emphasis added).)  The

informant's privilege applies to the substance of the informant's communications when disclosure of the contents is likely to reveal the identity of the informant.  *See Walsh v. Versa Cret Contr. Co.*, No. 21-CV-5697 (JMA) (JMW), 2022 U.S. Dist. LEXIS 134448, *7 (E.D.N.Y. July 28, 2022) (quoting *Carbajal v. Village of Hempstead*, No. 02-CV-4270 (ADS) (ETB), 2003 WL 23138447 at *2 (E.D.N.Y. Dec. 22, 2003)).

Defendants have not met their burden of establishing that their need for disclosure outweighs the government's need for secrecy.  *See In re United States*, 565 F.2d 19, 23 (2d Cir. 1977) (holding the party seeking disclosure of the informant's identity and/or communications bears the burden of establishing the need for such disclosure); *see also Superior Care*, 107 F.R.D. at 397 ("In this Circuit the burden of establishing the need for disclosure is on the party that seeks it and the burden is not met by a showing that the information would merely be of some assistance to the party.").  First, details such as when and why the investigation began, and the timing of conversations with Versa Cret employees could very well lead to revealing the identity of a confidential informant.  Second, Defendants cannot demonstrate how the initiation of the investigation is essential to their defense.  Rather, Defendants' sole argument is that the informant's privilege is inapplicable to the subject Questions.  This conclusory assertion, without more, is insufficient to overcome the assertion of the privilege here.

Finally, the case is still in the discovery stage, and Defendants have other means to prepare their defense.  Disclosure of an informant's identity is typically not proper at the discovery stage.  *Herman v. Crescent Pub. Grp., Inc.*, No. 00-CV-1665 (SAS), 2000 WL 1371311, at *8 (S.D.N.Y. Sep. 21, 2000).  Plaintiff has produced the case file containing all facts gathered precipitating the investigation, Defendants still have access to their own records, and are free to interview or depose any past or current employee.  In the context of this FLSA case,

the existence of these alternative means of defense indicates that Plaintiff's need for secrecy outweighs Defendants' need for disclosure.

**B.  Question 2 of William Dempsey's Deposition Invoking the Law Enforcement Privilege**

Plaintiff also argues that the law enforcement privilege applies to Question 2 of William Dempsey's deposition: "*How many people were carrying guns [at the execution of the warrant]?*"  Plaintiff argues that Question 2 pertains to law enforcement techniques and procedures, that responsive information would endanger witnesses and law enforcement personnel and would interfere with an investigation.  (DE 44 at 4.)  The Court agrees.

Plaintiff elaborates that personnel can encounter resistance to the execution of search warrants by employers, which can include the use of firearms.  (DE 44 at 4.)  Plaintiff notes that to reveal the number of armed personnel at the execution of such warrants would reveal "a core law enforcement technique" which "goes to the cooperation of investigation subjects" and "the safety of agency personnel and the public."  (DE 44 at 4.)  Defendants argue that revealing the number of armed personnel at the execution of the search warrant will not undermine the confidentiality of the investigation or endanger present or future individuals.  (DE 43 at 4.)  Rather, Defendants contend that the information is "sought to be precluded as a 'technique' of law enforcement."  (DE 43 at 4.)  Defendants maintain that such arguments are insufficient to preclude Dempsey's testimony or carry Plaintiff's burden.

The Court finds that revealing the exact number of armed personnel present at the execution of the warrant would not necessarily undermine the confidentiality of the investigation.  And Plaintiff's assertion that revealing this information endangers witnesses and law enforcement personnel is without any empirical data, and perhaps a bit attenuated though not implausible.  *Cf. In re The City of New York*, 607 F.3d at 944 (finding that requiring disclosure of

redacted undercover field reports would reveal information clearly related to law enforcement techniques and procedures).

Here, although Defendants satisfy the first two prongs to overcome the presumption against disclosure, the Court finds that Defendants fail to provide a "compelling need" for this information.  (DE 44 at 4.)  Defendants themselves reference William Dempsey's prior testimony regarding the presence of armed personnel during the execution of the search warrant in their letter brief.  (DE 43 at 4.)  Defendants make no argument as to why the exact number of armed personnel is required for their defense.  Moreover, Plaintiff already permitted Defendants to ask whether the officers were visibly armed.  (DE 44 at 4.)  Thus, Defendants have not overcome the presumption against disclosure.  Therefore, Question 2 of William Dempsey's deposition shall be precluded under the law enforcement privilege.

**C.  Questions 9 and 10 of Gene Toledo's Deposition and Question 4 of William Dempsey's Deposition Invoking the Informant's Privilege**

Plaintiff argues that the informant's privilege applies to Questions 9 and 10 of Gene Toledo's deposition, and to Question 4 of William Dempsey's deposition.  Defendants, however, argue that the informant's privilege does not apply to the questions at issue.  That argument fails for the reasons previously stated.

Defendants are correct that they have not openly sought the identity of any witness or informant in either deposition.  But again, the informant's privilege applies to the substance of the informant's communications when disclosure of the contents is likely to reveal the identity of an informer.  *See Carbajal*, 2003 WL 23138447, at *2.  Plaintiff persuasively argues that identifying the language spoken by employee informants, the timing of investigators' conversations with the former employees, and the specific law enforcement agency used by the

employer to threaten retaliation could all serve to identify characteristics of the informants' identities.  (DE 44 at 3.)  Defendants have not countered that argument.

Accordingly, the subject Questions shall be precluded under the informant's privilege.

### D.  Questions 5, 6 and 7 of William Dempsey's Deposition Invoking the Attorney-Client Privilege

Plaintiff asserts that Questions 5-7 of William Dempsey's deposition are protected by the attorney-client privilege, whereas Defendants argue that the privilege is inapplicable to the testimony.  The subject Questions are protected by the attorney-client privilege.  Whether Dempsey was instructed by counsel to review the investigatory file to prepare for the deposition was a confidential communication made for the predominant purpose of preparing for that deposition, *i.e.*, legal advice.  *See In re County of Erie*, 473 F. 3d 413, 418 (2d Cir. 2007).

Defendants argue that Question 5 ("*Were you instructed to review the investigatory file in preparation for this deposition?*") and Question 6 ("*Did you not receive the instruction to review the investigatory file in preparation for this deposition?*") required a yes or no response, and therefore cannot be said to reveal a confidential communication.  Tellingly, Defendants cite no authority for this position.  As this Court has previously held, the attorney-client privilege may protect a deponent from answering questions, even where a simple "yes" or "no" answer is called for, when the question concerns deposition preparation with counsel.  *See Pape v. Suffolk Cnty. Soc'y for Prevention of Cruelty to Animals*, No. 20-CV-01490 (JMA) (JMW), 2022 WL 1105563 at 1* n.1 (E.D.N.Y. Apr. 13, 2022).[3]

Defendants also contend that Question 7 ("*Is it safe to say you were not directed by counsel to review the entire file?*") is not protected by the attorney-client privilege because it sought confirmation of the absence of a communication.  Defendants again cite no authority for

---

[3] Defense counsel here was also counsel in the *Pape* case.

this proposition, which could also have applied to Question 6.  However, the attorney-client privilege protects a deponent from answering a question regarding deposition preparation, regardless of whether the question seeks the to confirm the existence or absence of a communication relating to legal advice.  *Id.*  This is distinguished from questions to a witness about the scope and extent of document searches undertaken in response to document demands propounded, which are entirely proper.  *See, e.g., Haroun v. ThoughtWorks, Inc.,* No. 20-CV-0100 (LJL), 2020 WL 6828490, at *2 (S.D.N.Y. Oct. 7, 2020) ("Plaintiff can inquire at deposition both about the documents that have been produced and those that have not been produced and can review the document production itself for obvious gaps.").

### E.  Protective Order

In light of the foregoing, Plaintiff has established good cause for the issuance of a protective order sustaining the Plaintiff's assertions of privilege.

### <u>CONCLUSION</u>

For the reasons stated above, the Court finds that Plaintiff has shown the informant's privilege applies to Questions 1-10 of Gene Toledo's deposition, Questions 1 and 4 of William Dempsey's deposition, Questions 1-4 of Nicole Stahl's deposition and Question 1 of Tricia Prepetit's deposition.  Plaintiff has also shown that the law enforcement privilege applies to Question 2 of William Dempsey's deposition.  Plaintiff has also carried his burden to show that the attorney-client privilege applies to Question 4-7 of William Dempsey's deposition.

Defendants' Motion to Compel (DE 43) is **DENIED** and Plaintiff's Cross-Motion for a Protective Order (DE 44) is **GRANTED** as to the subject questions.[4]   Accordingly, the subject Questions shall be precluded.

Dated:  Central Islip, New York
        March 23, 2023

**SO ORDERED:**

_/S/ James M. Wicks_
        JAMES M. WICKS
   United States Magistrate Judge

---

[4] Plaintiff indicated in his letter brief that although Question 3 of William Dempsey's deposition was listed on the Joint Addendum, the Question was not marked as an issue to be brought before the Court. Furthermore, Defendants have not mentioned Question 3 in their letter brief.  Therefore, the Court has declined to consider whether any privilege applies to Question 3.

# Appendix A

IP – Informant's Privilege

LEP – Law Enforcement Privilege

A-C – Attorney Client Privilege

DP – Deliberative Process

| Questions from Gene Toledo's Deposition | IP | LEP | A-C | IP & LEP |
|---|---|---|---|---|
| 1. Was the investigation precipitated by an employee complaint? | | | | X |
| 2. Why did the investigation begin? | | | | X |
| 3. How was the other case initiated? | | | | X |
| 4. At the time of your initial conversation with Bill Dempsey you had not spoken with any employees of Versa Cret? | | | | X |
| 5. When was the first time you spoke with an employee of Versa Cret? | | | | X |
| 6. Why did Francisco Marchan put statements in your investigative file? | | | | X |
| 7. Explain to me why [you were reluctant to reveal Francisco Marchan's involvement]? | | | | X |
| 8. What is the reason Francisco Marchan took statements that were not signed? | | | | X |
| 9. Were those statements taken in a language you don't speak? | X | | | |
| 10. When was the last time you spoke to a former employee? | X | | | |

| Questions from William Dempsey's Deposition | IP | LEP | A-C | IP & LEP |
|---|---|---|---|---|
| 1. What precipitated this investigation? | | | | X |
| 2. How many people were carrying guns? [at the execution of the warrant]? | | X | | |
| 3. What steps have the Wage and Hour office taken to investigate this matter once the litigation has begun? | | | | |
| 4. What law enforcement agency did Martins threaten to go to? | X | | | |
| 5. Were you instructed to review the investigatory file in preparation for this deposition? | | | X | |
| 6. Did you not receive the instruction to review the investigatory file in preparation for this deposition? | | | X | |
| 7. Is it safe to say you were not directed by counsel to review the entire file? | | | X | |

| Questions at Issue from Nicole Stahl's Deposition | IP & LEP |
|---|---|
| 1.  Did you have occasion to introduce [Wage and Investigator] Toledo to any of your complainants from Versa Cret 1 or 2? | X |
| 2.  So, you do remember identifying three complainants, correct? | X |
| 3.  Were there three complainants in Versa Cret 1? | X |
| 4.  The statements that you received from the three employees of Versa Cret 1, did any of those statements contain a complaint? | X |

| Question at Issue from Tricia Pepetit's Deposition | IP & LEP |
|---|---|
| 1.  What did [other Wage and Hour personnel] relay to you about how they became aware of the existence of the notebook? | X |

15