FILED
CLERK

April 5, 2023

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
MARTIN J. WALSH, Secretary of Labor,
United States Department of Labor,

                Plaintiff,

        -against-

VERSA CRET CONTRACTING COMPANY, INC.,
ORLANDO MARTINS, Individually and as Officer,
and CECILIA MARTINS, Individually and as Officer,

                Defendants.
------------------------------------------------------------------------X

**ORDER**

21-CV-5697 (JMA) (JMW)

**A P P E A R A N C E S:**

Hollis Virginia Pfitsch, Esq.
**U.S. Department of Labor**
Employment Law Unit
201 Varick Street, Room 983
New York, NY 10014
*Attorney for Plaintiff*

Jordan Laris Cohen
**Office of the Solicitor, U.S. Department of Labor**
New York Regional Office
201 Varick St., Rm 983
New York, NY 10014
*Attorney for Plaintiff*

Saul D. Zabell, Esq.
Diana Marie McManus, Esq.
**Zabell & Collotta, PC**
One Corporate Drive, Suite 103
Bohemia, NY 11716
*Attorneys for Defendants*

**WICKS,** Magistrate Judge:

It behooves any witness to a deposition to prepare adequately beforehand. *See Kyoei Fire & Marine Ins. Co. v. M/V Mar. Antalya*, 248 F.R.D. 126 (S.D.N.Y. 2007) ("Producing an unprepared witness is tantamount to a failure to appear." (quoting *Bank of New York v. Meridien BIAO Bank Tanzania Ltd.*, 171 F.R.D. 135, 151 (S.D.N.Y. 1997)). Typically, this entails meetings with counsel and includes discussion, review of the pleadings and sworn statements and consideration of key documents. *See* 2 Linda Miller Atkinson, *Litigating Tort Cases* § 18:11 (Sept. 2022) ("Because the deposition is recorded and may be used at trial, and because it can become evidence, every deposition requires preparation whether counseling a deponent who is a party to the action or contacting a deponent who may be a witness or consulting with an expert witness in preparation for the witness' deposition.").

Those preparation sessions are ordinarily protected by the attorney client privilege unless that privilege is deemed waived. Waiver can occur, for example, if a third party is present, which breaks the privilege. *See AU New Haven, LLC v. YKK Corp.,* No. 15-CV-03411 (GHW) (SN), 2016 WL 6820383, at *2 (S.D.N.Y. Nov. 18, 2016) ("With some exceptions, the attorney-client privilege is automatically waived when a privileged communication is disclosed to a third party or litigation adversary"). Can a witness, however, be shown documents during the preparation session without fear of waiving the attorney-client privilege or another applicable privilege? *Maybe*.

Plaintiff, Secretary of Labor, commenced this action pursuant to the Fair Labor Standards Act ("FLSA"), to restrain Defendants from obstructing the Secretary's investigation into alleged FLSA violations, from retaliating against cooperating employees, and to recover back wages and liquidated damages. (DE 1.) This is the Secretary of Labor's third such investigation into

Defendants. *See* DE 51 at 4 n.4 (referencing the first and second investigation). Before the Court are Defendants' Motion to Compel (DE 51), and Plaintiff's Cross-Motion for a Protective Order (DE 51). Both motions arose out of the depositions of Wage and Hour Investigators Nicole Stahl ("Stahl") and Tricia Prepetit ("Prepetit") and contained two issues -- the first of which was resolved by the Court in an earlier Order. (*See* DE 53.)

The current dispute relates to documents reviewed by Stahl and Prepetit in their preparation for their respective depositions. The parties dispute whether, under the Federal Rules of Evidence Rule 612, those documents are now subject to disclosure notwithstanding any applicable privileges. (DE 51.) In the telephone call with the Court on February 16, 2023, the parties' arguments were briefly heard on this issue. (*See* Electronic Order, dated Feb. 16, 2023.) The parties were then directed to file a joint letter providing authority for their respective positions. (DE 51.)

Defendants seek to compel Plaintiff to disclose the documents reviewed by the non-party witnesses in preparation for their respective depositions. Plaintiff in turn seeks a protective order, namely, a directive that the witnesses do not have to answer the subject questions. Plaintiff was directed to deliver certain documents[1] to the Court for *in camera* review, and the Court received those documents on March 29, 2023. (DE 56.) Having reviewed the subject documents and for the reasons stated herein, the parties' motions are **GRANTED** in part and **DENIED** in part.

---

[1] These documents include, *inter alia*, all documents within the second category (DE 51 at 4, 5); and (2) Stahl's declaration from the third category (DE 51 at 4, 6). *See infra* II.

3

## I. THE STANDARD

Rule 26 of the Federal Rules of Civil Procedure governs the scope of discovery. Pursuant to Fed. R. Civ. P. 26:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).

"[A] court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ." Fed. R. Civ. P. 26(c)(1); *see Gordon v. Target Corp.*, 318 F.R.D. 242, 246 (E.D.N.Y. 2016) ("[T]he touchstone for determining whether to issue a protective order under Rule 26(c) lies, in the first instance, on a party's ability to establish good cause.").

"Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984). The burden is on the party seeking the protective order to show "good cause: through 'particular and specific facts' as opposed to 'conclusory assertions.'" *Rofail v. United States*, 227 F.R.D. 53, 54-55 (E.D.N.Y. 2005). "If the movant establishes good cause for protection, the court may balance the countervailing interests to determine whether to exercise discretion and grant the order." *Id.* at 55.

Seeking a protective order to prevent disclosure of privileged material is the appropriate procedural course. *See, e.g.*, *Sec. of Lab. v. Superior Care*, 107 F.R.D. 395, 398 (E.D.N.Y. 1985) (granting a protective order because defendant had other means to prepare for trial); *Galvin v. Hoblock*, No. 00-CV-6058 (DAB) (MHD), 2003 WL 22208370, at *7-8 (S.D.N.Y. Sept. 24, 2003)

(granting, in part, a protective order as to the privileged documents because defendant had not shown a compelling need to overcome the privilege).

## II. DISCUSSION

As to Stahl, the subject documents fall into one of three categories: (1) documents Plaintiff's counsel provided to Stahl ahead of the deposition, which contained documents in identical form as they were produced in discovery including with the same redactions for privilege, (2) a subset of the documents in category one, except pure unredacted versions, and (3) two unredacted documents that were never produced in discovery. As to Prepetit, Defendants seek the documents in the first category as well as the transmittal email from Plaintiff's counsel to which the packet of documents were attached.

Defendants are of the view that disclosure is required since Stahl and Prepetit each reviewed these documents and testified regarding topics related to them. (DE 51.) Plaintiff argues that Stahl and Prepetit did not use these documents, or the privileged material contained therein, to refresh their recollections or to testify. (DE 51.) Plaintiff states that these documents are protected under one or more of the following privilege categories: informant's privilege, deliberative process privilege, law enforcement privilege, attorney-client privilege, and/or work product. (*See* DE 51; DE 51-3 (declaration formally invoking privileges)).[2]

Defendants' argument seems to stand on the naïve premise that reviewing documents in preparation of deposition testimony in and of itself requires disclosure. (*See* DE 51.) The inquiry is far more nuanced than that, however. Under Rule 612 when "a witness uses a writing

---

[2] The relevant legal standards are laid out in the Court's prior Orders and are incorporated here by reference. (*See* DE 26 at 5-12 (discussing informant's privilege, deliberative process privilege, and attorney-client privilege); DE 53 at 5-6 (law enforcement privilege).)

to refresh memory" then the adverse party is provided certain options "if the court decides that justice requires the party to have those options." Fed. R. Evid. 612(a). In relevant part:

> [A]n adverse party is entitled to have the writing produced at the hearing, to inspect it, to cross-examine the witness about it, and to introduce in evidence any portion that relates to the witness's testimony. If the producing party claims that the writing includes unrelated matter, the court must examine the writing in camera, delete any unrelated portion, and order that the rest be delivered to the adverse party. Any portion deleted over objection must be preserved for the record.

Fed. R. Evid. 612(b).

The rule applies equally whether the witness is testifying at trial or a deposition. Indeed, Rule 612 "has been held applicable to deposition testimony pursuant to Federal Rule of Civil Procedure 30(c)." *Magee v. Paul Revere Life Ins. Co.*, 172 F.R.D. 627, 637 (E.D.N.Y. 1997); *see also* Fed. R. Civ. P. 30(c) ("The examination and cross-examination of a deponent proceed as they would at trial").

A party attempting to compel a witness to identify documents that were reviewed prior to testifying must do more than simply ask the witness "*what documents did you review in preparation for your deposition?*". More is needed. That is, the examiner must pose questions that satisfy three conditions: "1) the witness must use the writing to refresh his memory; 2) the witness must use the writing for the purpose of testifying; and 3) the court must determine that production is necessary in the interests of justice." *Aviles v. S&P Global, Inc.*, 583 F. Supp. 3d 499, 505 (S.D.N.Y. 2022) (quoting *Sporck v. Peil*, 759 F.2d 312, 317 (3d Cir. 1985), *cert. denied*, 474 U.S. 903 (1985)). The purpose behind Rule 612 is fairness, that is, to provide a basis for cross-examination of testimony suggested by the documents. *Bank Hapoalim, B.M. v. Am. Home Assur. Co.*, No. 92-CV-3561 (KMW), 1994 WL 119575, at *5 (S.D.N.Y. Apr. 6, 1994). "However, 'nothing in the Rule [should] be construed as barring the assertion of a privilege with respect to writings used by a witness to refresh his memory.'" *In re Rivastigmine Pat. Litig.*

6

(MDL No. 1661), 486 F. Supp. 2d 241, 243 (S.D.N.Y. 2007) (alteration in original) (quoting Rule 612 advisory committee's note).

"Before ordering production of privileged documents, courts require that the documents 'can be said to have had sufficient 'impact' on the [witness's] testimony to trigger the application of Rule 612.'" *Bank Hapoalim, B.M.*, 1994 WL 119575, at *6 (quoting *Berkey Photo, Inc. v. Eastman Kodak Co.*, 74 F.R.D. 613, 615 (S.D.N.Y. 1977)).  Even when documents are found to have a sufficient impact on the witness's testimony, the Court must conduct a "balancing test to determine whether Rule 612 requires disclosure, notwithstanding the existence of a privilege." *In re Methyl Tertiary Butyl Ether (MTBE) Prod. Litig.*, No. 04-CV-4968 (SAS), 2012 WL 2044432, at *3 (S.D.N.Y. June 6, 2012).

The factors courts balance include:

> (1) whether production is necessary for a fair cross-examination; (2) the extent to which reviewing the document impacted the witness's testimony; (3) whether the witness was himself the author of the document (and therefore whether the document represents a mere memorialization of the witness's knowledge); and (4) whether the party seeking production is engaging in a fishing expedition.

*Id*. (internal quotation marks omitted).

**A. Documents Reviewed by Stahl and Prepetit in the First Category**

A lawyer's compilation and organization of documents is attorney work product. Here, Plaintiff's counsel's selection and grouping of documents in preparation for the witnesses' depositions constitutes opinion work product since it reflects counsel's "mental impressions and legal opinions as to how the evidence in the documents relates to the issues and defenses in the litigation." *Sporck v. Peil*, 759 F.2d 312, 315 (3d Cir. 1985) (finding documents selected by counsel in advance of the deposition were protected by the work-product doctrine notwithstanding Rule 612).  Moreover, the confidential transmittal email from Plaintiff's counsel

7

to Prepetit regarding deposition preparation, would similarly be protected, under attorney-client privilege.  *See In re County of Erie*, 473 F. 3d 413, 418 (2d Cir. 2007).

The packet of documents at issue contains merely 150 out of the 14,000 pages of documents already produced in discovery, (DE 51 at 9).  *See id.* at 316 ("In selecting and ordering a few documents out of thousands counsel could not help but reveal important aspects of his understanding of the case." (internal quotation marks omitted)).  Defendants summarily argue that Prepetit and Stahl reviewed the documents in all the categories to prepare for their depositions.  (DE 51 at 2.)  Again, that is not enough to compel the witness to respond to that question.  Simply looking at documents, however, is not enough to order disclosure (*see, e.g.*, DE 51-2 at 100-02 ("I looked over [the packet], yes."); DE 51 at 4 (Plaintiff notes that Prepetit stated that she "skimmed through" the email in preparation for the deposition)).[3]  *See Leucadia, Inc. v. Reliance Ins. Co.*, 101 F.R.D. 674, 679 (S.D.N.Y. 1983) ("The mere fact that a deposition witness looked at a document protected by the attorney-client privilege in preparation for a deposition is an inadequate reason to conclude that the privilege was destroyed."); *see also Suss v. MSX Int'l Eng'g Servs., Inc.*, 212 F.R.D. 159, 165 (S.D.N.Y. 2002) ("Unless there is some demonstrated impact on witness testimony, the witness cannot be deemed to have relied on the document.").

A review of the characterization of the deposition testimony does not establish that reviewing the email and/or entire packet of documents refreshed Stahl or Prepetit's recollection in any way, or that the *entire* packet of documents impacted or influenced their testimony.  For example, Stahl's testimony reflects that she only really reviewed a handful of documents to

---

[3] The Court notes that the parties did not provide Prepetit's deposition transcript because it was not available at the time the parties' filed their motion (DE 51), and thus, the Court has only the parties' characterizations of the testimony given.

prepare for her deposition. (*See* DE 51-2 at 7.) Although it would on its face seem to defy logic for counsel to show a witness a document in preparation for a deposition for any reason *other than* to refresh recollection, more than that assumption is needed to overcome the work product protection. And that is what is absent here. Nonetheless, it is the questioner who bears the burden to craft a precise line of questioning about the document review in order to establish a basis to conclude that the witness used or referred to the documents to refresh recollection. *See, e.g., Sporck*, 759 F.2d at 318 ("Indeed, if respondent's counsel had first elicited specific testimony from petitioner, and then questioned petitioner as to which, if any, documents informed that testimony, the work product petitioner seeks to protect—counsel's opinion of the strengths and weaknesses of the case as represented by the group identification of documents selected by counsel—would not have been implicated."). Merely positing the question to the witness "which documents did you review in preparation for the deposition" is simply not enough.

Notably, Defendants rejected Plaintiff's offer to identify the Bates[4] numbers of the specific documents that Stahl recalled reviewing from the packet itself. (DE 51 at 9.) If Defendants' goal was to test Stahl or Prepetit's credibility or memory (the purpose behind Rule 612), then Defendants should have accepted the bates numbers of the documents each witness reviewed. The Court sees no reason to order disclosure of documents already within Defendants' possession since such disclosure could only serve one purpose here -- to reveal privileged information. *See Aviles v. S&P Glob., Inc.*, 583 F. Supp. 3d 499, 505 (S.D.N.Y. 2022)

---

[4] "Bates" refer to the sequential numbering of documents used in document productions, the purpose of which is to simplify identification of source and provide for ease of retrieval. The phrase "Bates" stems from the "Bates Stamp", which was a mechanical device invented in the late-19th century by Edwin G. Bates. *Bates Numbering 101: History, Usage and Tutorial,* found at https://www.investintech.com/resources/blog/archives/7829-bates-numbering-101-history-usage-and-tutorial.html.

("[W]here a request is made for documents already in the possession of the requesting party, with the precise goal of learning what the opposing attorney's thinking or strategy may be, even third-party documents may be protected."). Declining Plaintiff's offer to identify by Bates numbers was the strategic path chosen by Defendants.

The interests of justice do not compel disclosure of the email and the *entire* packet of documents prepared and sent by Plaintiff's counsel to Stahl and Prepetit in preparation for each of their respective depositions. Defendants' interest in testing the credibility or accuracy of Stahl or Prepetit's testimony is not materially harmed by that result. *See Auscape Int'l v. Nat'l Geographic Soc'y*, No. 92-CV-6441 (LAK), 2002 WL 31250727, at *2 (S.D.N.Y. Oct. 8, 2002) (finding that the factors suggesting disclosure were outweighed by the fact that ordering disclosure of list of potential questions prepared by counsel would allow defense counsel to "invade their adversary's tactical assessments without significant benefit in assessing the credibility or accuracy of the testimony of the witness").

## B. Documents Reviewed by Stahl in the Second Category

The parties do not dispute that Stahl reviewed unredacted versions of documents that Plaintiff had previously produced to Defendants in discovery with redactions for privilege. The relevant documents are: (1) Stahl's narrative summary of the first investigation into Defendants, and (2) three witness statements Stahl had taken from employee informants during the first investigation. (DE 51 at 5; DE 1-2 at 6-9, 100-01.) Plaintiff asserts that redactions for informant's privilege, attorney-client privilege, and deliberative process privilege protect certain information in the narrative summary, and redactions for informant's privilege protect certain information in the three witness statements. (*See* DE 51 at 5; DE 51-3.)

10

Stahl testified that she accessed these documents "directly from her case file instead of referring to the packet prepared by counsel . . . ." (DE 51 at 5 (citing DE 1-2 at 6-9, 100-01).) Stahl specifically testified that none of the documents reviewed in preparation for the deposition were redacted. (*See* DE 51-2 at 12:11-20.) Defendants argue that Stahl relied on these documents to refresh her recollection and provide her testimony. (DE 51 at 2.) Plaintiff argues that Stahl only reviewed these documents in error and did not rely on them to refresh her recollection or to testify. (DE 51 at 5.)

The Court finds that the documents likely refreshed Stahl's recollection. A contrary finding would offend reason. With redacted versions of those same documents available, Stahl specifically resorted to the unredacted versions to, as Plaintiff's counsel put it during the conference with the Court, "familiarize" herself with the case again. Stahl's testimony reflects the same. *See, e.g.*, (DE 51-2 at 6 ("I read through my previous narrative, kind of went I just glanced at my comps to familiarize myself with the case again.").) Stahl was also able to identify the exact documents that she reviewed, and her deposition testimony reveals that she testified to topics related thereto. *See Bank Hapoalim, B.M.*, 1994 WL 119575, at *7 ("At his deposition, Mr. Spencer was able to identify specific documents that he had reviewed in preparation for his deposition; and his deposition testimony reflects knowledge of information contained in the documents." (citation omitted)).

In *Thomas*, the plaintiff had reviewed notes to prepare for her deposition that included the substance of conversations with former in-house counsel, over which plaintiff asserted attorney-client privilege. *Thomas v. Euro RSCG Life*, 264 F.R.D. 120, 121 (S.D.N.Y. 2010). The court held that the portions of the notes that would otherwise be privileged, must be produced because plaintiff waived privilege when plaintiff relied on the notes in preparation for her deposition, and

11

the interests of justice counseled toward production. *Id*. at 122. The plaintiff stated that she reviewed the notes because she had many conversations with general counsel, and it was going to be difficult for her to recount all of those conversations. *Id*. Since the conversations were a central part of the deposition, the court found that the notes likely had an impact on plaintiff's testimony. *Id*. The court also found that it was in the interests of justice for defendants to have the opportunity to adequately cross-examine plaintiff with access to the notes plaintiff admittedly reviewed so she could accurately answer questions given that the subject matter of the conversations memorialized in the notes and the conversations themselves, were likely to play a substantial role in plaintiff's case. *Id*.

Here, the narrative statement and three witness statements are amongst only a handful of documents Stahl reviewed in preparation of her deposition. (DE 51-2 at 7.) Stahl's role in the investigation was the central purpose of the deposition. (DE 51-2 at 44 ("We're here to really talk about your involvement with the Versa Cret cases.")). Thus, the documents as a whole refreshed Stahl's recollection. However, that is not the end of the inquiry. Defendants already have redacted versions of these documents which reflect the factual unprivileged material contained therein. Did the privileged portions sufficiently impact Stahl's testimony?

An *in camera* review of the documents was particularly instructive. A review of the narrative statement, the witness statements, and the deposition testimony reflects that only some of the redacted information contained within the narrative statement relates to topics Stahl testified about. First, the information protected by attorney-client privilege and deliberative process privilege found on page 4 of the narrative statement (bates number VCC000266), does not appear anywhere in the deposition testimony excerpts submitted to the Court, and the Court sees no reason for its disclosure.

12

Second, the information found on page 2 of the narrative statement (bates number VCC000264), which currently has redactions for informant's privilege does relate to Stahl's testimony.  But putting aside Rule 612 for a moment, a majority of the redacted information does not, nor is it likely to, even reveal the identity of the informants.  *See Carbajal v. Village of Hempstead*, No. 02-CV-4270(ADS)(ETB), 2003 WL 23138447, at *2 (E.D.N.Y. Dec. 22, 2003) (noting that informant's privilege applies to the informant's identity, and to the substance of communications where disclosure of their contents would likely reveal the informant's identity). Therefore, a majority of that information is not privileged and must be disclosed without redactions anyway.

Third, only the first, and the last, redactions on page 2 of the narrative statement (bates number VCC000264) and the last redaction on page 4 of the narrative statement (bates number VCC000266) contain information protected by the informant's privilege.  And all of the redactions in the witness statements contain information that either reveals, or is likely to reveal, the identity of an informant, and thus, is protected by the informant's privilege.  This information likely did not sufficiently impact Stahl's testimony.

Defendants' Counsel asked Stahl whether there was information in the narrative that could identify informants.  (DE 51-2 at 89-90.)  Stahl testified that she recalled that there was enough information in there that someone probably could identify the informants, but she only reviewed it for a general idea of "what the facts were," and she would have to "go back and look specifically" because she did not "recall if there are specific names."  (DE 51-2 at 90-91.)  And the information that Stahl does reference in her testimony, is already unredacted in the narrative statement.

Nonetheless, the nature of the informant's privilege counsels against disclosure. Courts have generally refused to disclose information protected by the informant's privilege in cases arising under the FLSA. *Sec'y of Lab. v. Superior Care Inc.*, 107 F.R.D. 395, 397 (E.D.N.Y. 1985) (citing Weinstein & M. Berger, 2 Weinstein's Evidence ¶ 510[05] at 510-29; C. Wright & A. Miller, Federal Practice & Procedure: Civil § 2019 n.77). Courts have found that the informant's identity is usually unrelated to the proof offered at trial, and that anonymity helps diffuse the fear of retaliation. *Id.*; *see also Dole v. Loc. 1942, Int'l Bd. of Elec. Workers, AFL-CIO*, 870 F.2d 368, 372 (7th Cir. 1989) ("[T]he government need not make a threshold showing that . . . retaliation is likely, because of the significant policy consideration behind the privilege, as well as the difficulty of such proof."). Thus, the Court will not order disclosure of information otherwise protected by the informant's privilege.

Accordingly, the Plaintiff is directed to re-produce a copy of the narrative statement to Defendants consistent with the Court's findings.

**C. The Documents Reviewed by Stahl in the Third Category**

The third category contains two unredacted documents not previously produced, or requested, in discovery -- back wage computations and a declaration. (DE 51 at 8.) Plaintiff states that as of March 2, 2023, both documents have been produced to Defendants with only the declaration containing slight redactions for informant's privilege and law enforcement privilege. (DE 51 at 4 n.4.) The same material is covered by both privileges. The declaration was filed in court in connection with the search warrant for the third investigation of Versa Cret and recaps the case based on Stahl's knowledge. (DE 51 at 8.)

Plaintiff notes that although the declaration contains mostly unprivileged information, there is a "brief reference to the initiation of the investigation" that falls within the law

enforcement privilege, and the informant's privilege. (DE 51 at 8.) It is undisputed that Stahl reviewed an unredacted version of the declaration in preparation for the deposition and testified about the information she provided in support of the search warrant. (DE 51 at 8.) An *in camera review* of the declaration shows that information redacted did not sufficiently impact Stahl's testimony.

Moreover, the interests of justice do not require disclosure. Similar to the witness in *In re Rivastigmine Pat. Litig.*, Stahl herself authored the declaration and it simply contains a synopsis of what happened in the two investigations that Stahl completed (DE 51-2 at 82, 88). *See In re Rivastigmine Pat. Litig.* (MDL No. 1661), 486 F. Supp. 2d 241, 244 (S.D.N.Y. 2007) (noting that since the witness authored the document, she had the "factual information about which she testified from the outset and was subject to cross-examination regarding her own knowledge," and an *in camera* review of the redacted documents showed the information was unlikely to have influenced the witness' testimony). Defendants had the opportunity to question Stahl as to the declaration she herself authored and they did not explore what specifically, if anything, within it refreshed her recollection. (DE 51-2 at 11-12, 80-83.)

The declaration has already been produced *sans* minor redactions for references to information simultaneously covered by both the informant's privilege and the law enforcement privilege. Given the nature of the informant's privilege, a review of the declaration and the deposition excerpts of Stahl's testimony, the Court finds disclosure is not warranted here.

15

### III. <u>CONCLUSION</u>

For the reasons stated herein, Defendants' motion to compel (DE 51) and Plaintiff's motion for a protective order (DE 51) are **GRANTED** in part and **DENIED** in part.

Plaintiff is directed to re-produce the narrative statement to Defendants with all the redactions on page 2 (bates number VCC000264) removed except for the first and last redactions.

Dated: Central Islip, New York
April 5, 2023

SO ORDERED:

/S/ *James M. Wicks*
JAMES M. WICKS
United States Magistrate Judge