**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X
JULIE A. SU, *Acting Secretary of Labor*,
*United States Department of Labor*,

*Plaintiff*,

**MEMORANDUM**
**AND ORDER**

-against-                          21-cv-05697 (JMA)(JMW)

VERSA CRET CONTRACTING COMPANY,
INC., ORLANDO MARTINS, *Individually and*
*as Officer*, CECILIA MARTINS, *Individually and*
*as Officer*,

*Defendants*.

-----------------------------------------------------------------X

**A P P E A R A N C E S:**

Hollis Virginia Pfitsch, Esq.
**U.S. Department of Labor**
Employment Law Unit
201 Varick Street, Room 983
New York, NY 10014
*Attorney for Plaintiff*

Saul D. Zabell, Esq.
Diana Marie McManus, Esq.
**Zabell & Collotta, PC**
One Corporate Drive, Suite 103
Bohemia, NY 11716
*Attorneys for Defendants*

**WICKS**, Magistrate Judge:

      Plaintiff, Secretary of Labor, commenced this action pursuant to the Fair Labor Standards

Act (the "Act" or the "FLSA"), to restrain Defendants from obstructing the Secretary's

investigation of violations of the Act and retaliating against cooperating employees, and to

recover back wages and liquidated damages. (ECF Nos. 1, 59.) As of September 11, 2023, fact

1

discovery was deemed complete, and on November 11, 2023, the case was referred to the undersigned for a Settlement Conference. (ECF No. 64; Electronic Order dated November 7, 2023.) Following unsuccessful settlement discussions, the case was returned to District Judge Joan M. Azrack for all further proceedings. (*See* Electronic Order dated January 16, 2024.)

At a February 27, 2024 Status Conference before the undersigned, Defendants expressed intention to file a motion to re-open discovery, and Plaintiff expressed intention to file a motion for a protective order to allow the identification of employee-informant witnesses 30 days before trial, to which the undersigned set briefing schedules on each anticipated motion. (ECF No. 71.) Accordingly, the latest motions before the Court are: (i) Defendants' Motion to Re-Open Discovery (ECF No. 72), which is opposed by Plaintiff (ECF No. 75); and (ii) Plaintiff's Motion for a Protective Order (ECF No. 74), which is opposed by Defendants (ECF No. 77). For the foregoing reasons, Defendants' Motion to Re-Open Discovery (ECF No. 72) is **DENIED**, and Plaintiff's Motion for a Protective Order (ECF No. 74) is **GRANTED** *in part* and **DENIED** *in part*.

## **BACKGROUND**

The Court assumes the parties' familiarity with the underlying facts and procedural history of the case, as more specifically set forth in this Court's prior Order dated May 18, 2023, granting Plaintiff's Motion to Amend the Complaint. (ECF No. 58.)

Discovery closed on September 11, 2023, and Judge Azrack referred the case to the undersigned to conduct a Settlement Conference on November 7, 2023. (ECF No. 64; Electronic Order dated November 7, 2023.) The case did not settle, and the undersigned returned the case to Judge Azrack for all further proceedings. (Electronic Order dated January 16, 2024.) At a February 27, 2024 Status Conference, the undersigned set a date for a Final Pretrial Conference,

and the parties expressed intention to file the instant motions, to which the undersigned set briefing schedules accordingly. (ECF No. 71.)

On March 1, 2024, Defendants filed their Motion to Re-Open Discovery. (ECF No. 72.) Defendants seek to re-open discovery for the purpose of obtaining and examining Notices that the Department of Labor ("DOL") has issued to employees of Defendant Versa Cret Contracting Company, Inc. ("Versa Cret") following the close of discovery (hereafter, the "DOL Notices"). (ECF No. 27 at 1.) Defendants assert the DOL Notices "offer eligibility of certain benefits that may be sought in the event that those individuals act as witnesses for the government in their prosecution of Defendants" including "lawful status and employment authorization." (*Id*.) Defendants contend "the extension of such benefits to witnesses creates recognized credibility issues for which Defendants may be entitled to explore both prior to and during any trial in this action." (*Id*.) Defendants further argue that to deny them the opportunity to examine the DOL Notice would violate their procedural due process rights. (*Id*.)

Defendants contend the DOL Notices invite current and former employees of Versa Cret to seek "immigration protection from the Department of Homeland Security [("DHS"]][,]" and that the "mechanism upon which the DOL relies in such representations is its issuance of a 'Statement of DOL Interest.'" (*Id*. at 2.) According to Defendants, in issuing a "Statement of DOL Interest" without a request from an employee, the DOL "has deviated from its standard processes – an action that must be scrutinized." (*Id*.) Additionally, Defendants contend that because "the DOL is advising employees that it will recommend them for prosecutorial discretion should they provide information that the DOL may use in its attempt to 'enforce the labor laws or provide all available remedies within its jurisdiction[,]' it is clear that the DOL holds themselves out as prosecutors seeking to enforce their unilateral view of justice[,]" and

3

"[t]herefore, Defendants must be entitled to the same rights and liberties of procedural due process as individuals facing deprivation of life, liberty, or property interests in criminal prosecution at the hands of a government agency." (*Id.*)[1]

Based on this principle, Defendants contend discovery should be re-opened and that Plaintiff should be ordered to provide: (i) the identity of all individuals whom were issued DOL Notices; (ii) confirmation of which solicited individuals, if any, have submitted a request for prosecutorial discretion; (iii) the status of any requests for prosecutorial discretion; and (iv) the forms of prosecutorial discretion that have been granted to prospective government witnesses; and (v) identification of the information the individual provided after receiving prosecutorial discretion as "opposed to information provided upon an individual's free, unadulterated volition." (*Id*. at 3.) Defendants argue they have the right to know, in advance of trial, whether a particular government witness was promised and/or has received prosecutorial discretion, as "[s]uch information is crucial to Defendants' ability to explore a particular witness' credibility." (*Id*.)  Defendants further contend that they never have nor will engage in retaliatory conduct should the individuals' identities be revealed, and that the DOL has already provided its witnesses with protection from retaliation through its issuance of the Statement of DOL Interest. (*Id*.)

On March 8, 2024, Plaintiff filed its Response in Opposition, asserting that Defendants cannot show good cause to re-open discovery. (ECF No. 75.) Plaintiff contends that Defendants' request is a "proposed fishing expedition" of "privileged and irrelevant matters solely for credibility purposes" that "is entirely speculative and would cause substantial prejudice." (*Id* at 1.) Specifically, Plaintiff argues Defendants' discovery request would expose the immigration

---

[1] In support, Defendants rely on the U.S. Supreme Court decision *Giglio v. United States*, 405 U.S. 150 (1972) ("*Giglio*"), and its progeny. (*Id*. at 2-3.)

status of confidential employee-informants, cause an *in terrorem* effect, erode enforcement of the [FLSA][,]" and is "not proportional to the needs of the case." (*Id*.)

*First*, Plaintiff argues Defendants' speculations regarding the Statement of Interest ("SOI") process are misplaced. Plaintiff explains the DOL, DHS – "and other agencies, like the EEOC, NLRB, and DOJ—have worked together for years to help ensure government access to witnesses for enforcement actions." (*Id*.) Specifically, the DHS uses "prosecutorial discretion" to provide people who have information that may be useful in enforcement actions with temporary immigration protection, called "deferred action[,]" which "helps workers report violations and cooperate in labor investigations and in turn helps federal agencies investigate and prosecute violations." (*Id*.) Plaintiff further explains that the DOL's role in issuing an SOI is limited to showing the agency has an enforcement interest in a workplace, and does not guarantee DHS will grant deferred action to anyone – if individuals do apply, DHS processes applications in its sole discretion. (*Id*.)

Plaintiff contends the kind of "*quid pro quo*" arrangement Defendants contemplate uncovering does not exist, as the DOL does not enter into "*quid pro quo*" agreements with workers. (*Id*.) They claim "DOL's SOIs do not refer to any particular workers or witnesses, but to the workplace as a whole, and DOL may, as necessary, make the SOI available to all possible witnesses in a workplace—as in this case where DOL sent an outreach letter to all Defendants' employees for whom it had contact information." (*Id*.) Additionally, "there is no requirement, formal or informal, that a person who uses an SOI must provide DOL any information or serve as a witness." (*Id.*) Overall, Plaintiff argues "the material Defendants speculate they may find cannot serve as a proper basis to re-open discovery." (*Id*.)

*Second*, Plaintiff argues that Defendants have not demonstrated good cause to re-open discovery. (*Id.* at 2.) Plaintiff contends that all the material sought are covered by informants' privilege, which protects informants' identities, and the law enforcement privilege, which "prevent[s] disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation." (*Id.*) (quoting *In re City of New York*, 607 F.3d 923, 940-41 (2d Cir. 2010)) (internal quotation marks omitted). Plaintiff claims the SOI is a law enforcement technique and disclosure of the details of its use in a particular case could impede the DOL's ability to enforce the law, and Defendants cannot otherwise "show the compelling need required to overcome" either privilege. (*Id.* at 2-3.)

Plaintiff further claims that notwithstanding the privileged nature of the documents themselves, the proposed discovery would be highly prejudicial. (*Id.* at 3.) Plaintiff contends that exposure of the identities of confidential informants and probing into their immigration status would deter them from further participation in this case, and "[t]he proposed discovery would be another tool in Defendants' interference with the DOL's investigation and retaliation against suspected confidential informants." (*Id.*) Plaintiff maintains that federal district courts "have long been clear that the prejudice of immigration-related discovery in FLSA cases far outweighs any minimal relevance for credibility purposes, because of the *likely in terrorem* effect on potential witnesses." (*Id.*) (collecting cases).

On March 8, 2024, Plaintiff filed its Motion for a Protective Order to allow identification of employee-informant witnesses 30 days before the anticipated trial in this case. (ECF No. 74.) Plaintiff contends the 30 days before trial is consistent with the existing case law and "sufficient

to balance Defendants' interests in preparing for trial with the government's 'strong and legitimate interest in protecting confidential sources from premature identification.'" (*Id*. at 1) (quoting *United States v. Abuhamra*, 389 F.3d 309, 324 (2d Cir. 2004)) ("*Abuhamra*"). Plaintiff further argues that requiring the Acting Secretary to disclose potential employee-informant witnesses prior to setting a trial date, and potentially months before trial, "would pose a serious risk of chilling employee participation in this and other proceedings and would be anomalous among the case law." (*Id*.) Plaintiff maintains that a deadline of 30 days before trial is a "moderate and reasonable compromise" given relevant precedent, and is "particularly appropriate in this case given the small number of employees at issue (31); the nature of the FLSA violations alleged, which concern Defendants' own systemic pay and recordkeeping practices; and a history of retaliation by Defendants[,]" and that the Acting Secretary otherwise meets the "good cause" standard for a protective order against premature disclosure of privileged information. (*Id*.)

*First*, Plaintiff argues that to protect informant's privilege, which protects information tending to reveal the identities of government informants, court generally require witness identification 10 to 30 days before trial. (*Id*. at 2.) Plaintiff contends that the Acting Secretary has a strong interest in setting a later timeline for employee-informant witness disclosure, as "[the more time an employer knows the employee-informants' identities, the more opportunity the employer has to retaliate against and intimidate those informants, with the possible result that informants are unwilling to testify" and "some confidential informants' identities may be unnecessarily disclosed because the case may settle before trial, or the Acting Secretary may determine closer to trial not to call certain witnesses." (*Id*.) Plaintiff argues that the information relevant to the case (*i.e.*, Defendants' pay and record keeping practices) is already available to

Defendants, and Defendants otherwise had "a full and fair opportunity to depose or interview employees during discovery, yet chose not to do so." (*Id.*) *Second*, Plaintiff argues that there is a substantial risk of retaliation in this case, in light of the allegations contained in the Amended Complaint for retaliation, and Defendants' previous settlement of another FLSA anti-retaliation case that DOL brought for illegally intimidating employees into kicking back unpaid overtime wages. (*Id.* at 3.) Plaintiff maintains the Acting Sectary's interest in protecting the identities of employee witnesses is "especially strong and needing of protection" under these circumstances. (*Id.*)

On March 22, 2024, Defendants filed their Response in Opposition to Plaintiff's Motion for a Protective Order. (ECF No. 77.) *First*, Defendants argue that the particularized needs of this case necessitate immediate disclosure of the DOL's evidence and/or witnesses. (*Id.* at 1.) Specifically, Defendants contend that "unlike in other matters in which disclosure is appropriate thirty (30) days prior to trial, there is a particularized need for disclosure due to the nature of the retaliation claims asserted." (*Id.*) Defendants contend that the DOL's addition of retaliation allegations in the Amended Complaint "substantially increases the scope of the issues to be heard at trial and necessitates increased time for Defendants to meaningfully prepare." (*Id.* at 2.)[2] Defendants claim that "[a]s it stands, it is presently unclear if such allegations of retaliation are merely supported by interested employees, or, other non-party employers who are alleged to have been contacted by Defendant Orlando Martins[,]" and "[t]o the extent it is the latter, the DOL's representations that Defendants should expect that its informants are limited to a finite number of Versa Cret's current and former employees would not be accurate . . . [h]owever, even

---

[2] For example, Defendants state that "[i]f a particular informant claims he was 'blacklisted' by various, presently undisclosed employers, Defendants must be afforded the opportunity to investigate such claims." (*Id.*)

if it is the former, Defendants still must be afforded the opportunity to present defenses, including rebuttal witnesses, to the allegations." (*Id*.)[3]

Defendants further argue they "could not reasonably conduct a thorough and proper investigation within thirty (30) days," as Defendants would need to determine: "1) which witnesses allegedly complained of being blacklisted by non-party employers; and 2) which employers the witnesses are claiming blacklisted them at the direction of Defendant Orlando Martins[,]" which will require "significant time and resources." (*Id*. at 2.) Defendants claim that if this Court "grant[s] the DOL's request for a protective order and permit them to withhold identification of witnesses until thirty (30) days before trial, it is likely Defendants will not be made aware of the precise nature of the allegations of retaliation until the time of trial" and "[i]t is a strong possibility that the identity of the non-party employers is only disclosed, for the first time, during trial[,]" at which point "Defendants may be prevented from marshaling a proper defense as they may be unable to secure the appearance of the non-party employers for the purpose of refuting the claims asserted by the DOL's informants." (*Id*.)

*Second*, Defendants argue there is no risk of retaliation if the witnesses' identities are disclosed as soon as possible. (*Id*. at 2-3.) Defendants argue that they previously had access to potential witness names, provided by the DOL, and undertook no retaliation, "[which] should serve as confirmation that no retaliation will occur here upon disclosure of witness identity." (*Id*. at 3.) Defendants maintain they will utilize such information for "the limited purpose of preparing defenses to the claims asserted against them." (*Id*.) Specifically, Defendants assert that the DOL must "produce their list of witnesses as soon as possible so that Defendants may

---

[3] The Court notes that the Acting Secretary's request for a protective order "does *not* cover witnesses other than *employee-informants*—including Wage Hour personnel, and Defendants Orlando and Cecilia Martins —whom she intends to identify at the time of submitting a proposed pretrial order." (ECF No. 74 at 1) (emphasis added).

investigate the specific facts and circumstances underlying the claims of retaliation" which, according to Defendants, "will require[], at a minimum, limited depositions on the issue so that Defendants may learn the identity of non-party employers alleged to have 'blacklisted' Defendants' current and/or former employees" and likely require "deposing these non-party employers." (*Id.*)[4]

## DISCUSSION

## I.  Defendants' Motion to Re-Open Discovery

"A party seeking to reopen discovery bears the burden of establishing good cause and discovery should not be extended when there was ample opportunity to pursue the evidence during discovery." *Moroughan v. Cnty. of Suffolk*, 320 F. Supp. 3d 511, 514 (E.D.N.Y. 2018) (internal quotations and citations omitted). "[W]here there has been 'a fully adequate opportunity for discovery' the trial court may consider whether additional discovery would yield dispositive evidence." *Jacobs v. New York City Dept. of Educ.*, No. 11-CV-5058 (MKB) (RML), 2015 WL 7568642, at *3 (E.D.N.Y. Nov. 24, 2015) (emphasis added) (quoting *Trebor Sportswear Co., Inc. v. The Limited Stores, Inc.*, 865 F.2d 506, 511-12 (2d Cir. 1989)).

Courts apply a six-part test when faced with an eleventh-hour request such as this to re-open discovery: "1) whether trial is imminent, 2) whether the request is opposed, 3) whether the nonmoving party would be prejudiced, 4) whether the moving party was diligent in obtaining

---

[4] The Court notes that Defendants would have to make a formal request to re-open discovery for the purpose of taking these individuals' depositions, and Defendants otherwise had a full and fair opportunity to "investigate" Plaintiff's retaliation claims during the discovery period, which closed on September 11, 2023. (ECF No. 64.) When a party requests an extension of a discovery deadline after the deadlines in fact have passed, they must file a motion under Fed. R. Civ. P. 6(b)(1)(B) to re-open discovery. *See* Fed. R. Civ. P. 6(b)(1)(B) ("When an act may or must be done within a specified time, the court may, for good cause, extend the time . . .on motion made after the time has expired."); *see also United States v. Prevezon Holdings, Ltd.*, 236 F. Supp. 3d 871, 873 (S.D.N.Y. 2017) ("The Government's request to use the Additional Relevant Documents is effectively an application to re-open discovery.").

discovery within the guidelines established by the court, 5) the foreseeability of the need for

additional discovery in light of the time allowed for discovery by the district court, and 6) the

likelihood that the discovery will lead to relevant evidence." *Moroughan*, 320 F. Supp. 3d at 515.

> Pursuant to Fed. R. Civ. P. 26:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).

Information "is relevant if: '(a) it has any tendency to make a fact more or less probable

than it would be without the evidence; and (b) the fact is of consequence in determining the

action.'" *Vaigasi v. Solow Mgmt. Corp.*, No. 11 Civ. 5088 (RMB)(HBP), 2016 WL 616386, at

*11 (S.D.N.Y. Feb. 16, 2016) (quoting Fed. R. Evid. 401). Moreover, "[t]he party seeking the

discovery must make a *prima facie* showing that the discovery sought is more than merely a

fishing expedition." *Evans v. Calise*, No. 92 Civ. 8430 (PKL), 1994 WL 185696, at *1

(S.D.N.Y. May 12, 1994); *see also Mandell v. The Maxon Co., Inc*., No. 06 Civ. 460(RWS),

2007 WL 3022552, at *1 (S.D.N.Y. Oct. 16, 2007) ("[T]he party seeking discovery bears the

burden of initially showing relevance.").

The Court notes that Defendants have not set forth any arguments or authority that

adequately address, let alone acknowledge, the six factors for determining whether re-opening

discovery is warranted.[5] Nonetheless, the Court will analyze each factor in turn.

---

[5] The Court agrees with Plaintiff that Defendants' "extended discussion of criminal due process protections is misplaced" as *Giglio* "does not apply in civil cases." (ECF No. 75 at 3) (citing *Hassoun v. Searls*, 467 F. Supp. 3d 111, 121-22 (W.D.N.Y. 2020)) ("*Brady*, *Giglio*, and their progeny do not govern . . . civil matters"). The Court further agrees that "Defendants' reference to criminal due process protections does not meet their burden to show good cause to re-open discovery." (*Id.*)

Here, the first and second factors – the imminence of trial and whether the request is opposed – weigh against re-opening discovery. Although a trial date has not been set, the parties are preparing for trial, as a Joint Pretrial Order is due May 10, 2024, and a Final Pretrial Conference is scheduled for May 30, 2024 (ECF No. 71). Moreover, Defendants' request is opposed (*See* ECF No. 75.) The third factor – prejudice to the non-moving party – is also clear. *Procedurally*, granting Defendants' request would significantly delay trial, and Defendants may discover from the documents that certain individuals need to be deposed, or that certain factual issues warrant further inquiry. Each of these additional tasks, when viewed together, would incur considerable time and cost to the parties.

*Substantively*, Plaintiff faces a substantial risk of prejudice if ordered to produce the DOL Notices – specifically, courts in this Circuit and others have recognized that "permitting inquiry into a party's immigration status, when not relevant, presents a danger of intimidation that would inhibit plaintiffs in pursuing their rights." *Rodriguez v. Pie of Port Jefferson Corp.*, 48 F. Supp. 3d 424, 426 (E.D.N.Y. 2014) (internal citations omitted) (collecting cases); *Rengifo v. Erevos Enterprises, Inc.*, No. 06 CIV. 4266 SHS RLE, 2007 WL 894376, at *2 (S.D.N.Y. Mar. 20, 2007) (quoting *Liu v. Donna Karan International, Inc.*, 207 F.Supp.2d 191, 193 (S.D.N.Y.2002)) (acknowledging the "*in terrorem* effect of inquiring into a party's immigration status and authorization to work in this country when irrelevant to any material claim because it presents a 'danger of intimidation [that] would inhibit plaintiffs in pursuing their rights.'"); *Topo v. Dhir*, 210 F.R.D. 76, 78 (S.D.N.Y. 2002) (internal citations omitted) (finding it "likely that any undocumented litigant forced to produce documents related to his or her immigration status will withdraw from the suit rather than produce such documents and face  potential deportation."); *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1064 (9th Cir. 2004) ("While documented workers face

the possibility of retaliatory discharge for an assertion of their labor and civil rights, undocumented workers confront the harsher reality that, in addition to possible discharge, their employer will likely report them to the INS and they will be subjected to deportation proceedings or criminal prosecution.")[6]

Defendants wish to re-open discovery to obtain the DOL Notices for the sole purpose of assessing witness credibility. (ECF No. 27 at 1.) Specifically, Defendants assert the DOL Notices "offer eligibility of certain benefits that may be sought in the event that those individuals act as witnesses for the government in their prosecution of Defendants" including "lawful status and employment authorization" which "creates recognized credibility issues for which Defendants may be entitled to explore both prior to and during any trial in this action." (*Id*.)[7] However, courts in this Circuit have also recognized that "[w]hile it is true that credibility is always at issue, that 'does not by itself warrant unlimited inquiry into the subject of immigration status when such examination would impose an undue burden on private enforcement of employment discrimination laws.'" *Rengifo*, No. 06 CIV. 4266 SHS RLE, 2007 WL 894376, at *2–3 (quoting *Avila-Blum v. Casa de Cambio Delgado, Inc*., 236 F.R.D. 190, 192 (S.D.N.Y.2006)); *E.E.O.C. v.*

---

[6] As Plaintiff identifies, former or current employees of Defendants face possible risk of retaliation if Plaintiff is ordered to produce the DOL Notices. *See* ECF No. 75 at 3 ("The proposed discovery would be another tool in Defendants' interference with the DOL's investigation and retaliation against suspected confidential informants, as outlined in the amended complaint."); *Rengifo*, No. 06 CIV. 4266 SHS RLE, 2007 WL 894376, at *3 ("Granting employers the right to inquire into immigration status in employment cases would allow them to implicitly raise threats of such negative consequences when a worker reports illegal practices.").

[7] The Court finds the Plaintiff's explanation of the substance and contents of the DOL Notices satisfactory to rebut Defendants' contention that SOIs are "*quid pro quo*" arrangements that offer citizenship status in exchange for witness testimony. *See* ECF No. 75 at 1. Moreover, the Court rejects Defendants' contention that Plaintiff is engaging in dilatory tactics in refusing to share the DOL Notices, as Plaintiff has declined to do so at this stage on privilege grounds and has otherwise offered to produce the documents for an *in-camera* review before this Court. *See id*. at 2, n. 5 ([T]he DOL's letter to Defendants' employees is not included in this public filing because it refers to privileged information . . . [t]he Acting Secretary respectfully requests to share the letter *in camera* should the Court require it.")

*First Wireless Grp*., Inc., 225 F.R.D. 404 (E.D.N.Y. 2004) ("*First Wireless*") (denying disclosure

of discovery into plaintiffs' immigration status for the purpose of challenging plaintiffs'

credibility because of the "*in terrorem* effect" of immigration status discovery).

Indeed, an employee's immigration status has little probative value in this FLSA action,

and any potential relevance the DOL Notices may have to the parties' claims or defenses is

nevertheless outweighed by the risk of prejudice to Plaintiff. *See e.g., Marquez v. Erenler*, Inc.,

No. 12 Civ. 8580, 2013 WL 5348457, at *1 (S.D.N.Y. Sept. 20, 2013) ("Based on the irrelevance

of immigration status to an FLSA claim, as well as the chilling effect that such compelled

disclosure would have on enforcement of the FLSA, we deny defendants' request for disclosure

of immigration status."); *First Wireless*, 225 F.R.D. at 406 (finding the "prejudice to plaintiff

outweighs any potential relevance [immigration status] may have to the defense"); *Rodriguez*, 48

F. Supp. 3d at 426 (collecting cases) (quoting *Flores v. Amigon*, 233 F. Supp. 2d 462, 464

(E.D.N.Y. 2002)) ("[C]ourts addressing the issue of whether defendants should be allowed to

discover plaintiff-workers' immigration status in cases seeking unpaid wages brought under the

FLSA have found such information to be undiscoverable. Even where it is arguable that

information concerning a plaintiff's immigration status may be relevant, courts have generally

held that 'the potential for prejudice far outweighs whatever minimal probative value such

information would have.'"); *Liu*, 207 F. Supp. 2d at 191 (holding evidence of workers'

immigration status was not relevant and prejudice to workers outweighed need for disclosure in

FLSA action); *Rengifo*, No. 06 CIV. 4266 SHS RLE, 2007 WL 894376, at *2 (noting plaintiff's

immigration status was a "collateral issue" in FLSA action).

The fourth and fifth factors further weigh against granting Defendants' request.

Discovery commenced in May 2022 (*See* ECF No. 15), and was finally closed on September 11,

2023 (ECF No. 64) after many extensions (*see, e.g.,* (Electronic Orders dated March 21, 2022, August 25, 2022, and February 2, 2023; ECF Nos. 27, 39, 62). The docket amply reflects the multiple extensions afforded to complete discovery. The Court agrees with Plaintiff that Defendants have had ample time and opportunity to assess the credibility of their employees by taking said employee's depositions, and yet have declined to depose *any* workers to date. *See* ECF No. 75 at 2 ("Defendants also cannot show diligence (factor four) in taking discovery related to their true purpose—to probe the credibility of their employees—since they declined to depose *any* workers."). Defendants have not otherwise explained the need to depose these individuals now "in light of the time allowed for discovery" by this Court. *Moroughan*, 320 F. Supp. 3d at 515.

Under the sixth and final factor, there is little likelihood that the requested documents contain information relevant to this case. As previously explained, an individual's immigration status is irrelevant to their claims under the FLSA and any potential defenses, and any probative value (*i.e.*, to assess witness credibility), is substantially outweighed by the significant risk of prejudice to Plaintiff. *See* ECF No. 75 at 2, n. 4 (citing *Madeira v. Affordable Hous. Found., Inc.*, 469 F.3d 219, 243 (2d Cir. 2006)) ("*Madeira*") (collecting cases)[8] ("The information sought is not relevant to the underlying claims here, and Defendants have not claimed it is. Under the FLSA, all workers are entitled to unpaid wages regardless of immigration status."); *Flores*, 233

---

[8] The Second Circuit in *Madeira* explained that an "order requiring an employer to pay his undocumented workers the minimum wages prescribed by FLSA for labor actually and already performed" does not "require, or even presume, a continuing violation" of the Immigration Reform and Control Act ("IRCA"). *Madeira*, 469 F.3d at 243 ("In such circumstances, the immigration law violation has already occurred. The order does not itself condone that violation or continue it. It merely ensures that the employer does not take advantage of the violation by availing himself of the benefit of undocumented workers' past labor without paying for it in accordance with minimum FLSA standards. Thus, a number of district courts have concluded that IRCA does not preclude such FLSA awards.").

F. Supp. 2d at 464 (holding information related to plaintiff's immigration status irrelevant to defendant's defense in FLSA action and, "even if it were, the potential for prejudice far outweighs whatever minimal probative value such information would have"); *Lundstedt v. JP Morgan Chase Bank*, N.A., 853 F. App'x 704, 708 (2d Cir. 2021) (citing Fed. R. Evid. 403) (denying motion to re-open discovery where the probative value of the documents sought was "substantially outweighed by the risk of unfair prejudice" to the non-moving party).

Accordingly, because Defendants "fail[ed] to illustrate the likelihood that reopening discovery will lead to relevant evidence" in this case, and the remaining factors weigh against re-opening discovery, the Court finds Defendants have not met their burden in demonstrating good cause to re-open discovery at this late stage in the litigation. *Humphreys v. New York City Health & Hosps. Corp*., No. 16-CV-9707 (VSB), 2023 WL 155446, at *4 (S.D.N.Y. Jan. 11, 2023).

## II. <u>Plaintiff's Motion for a Protective Order</u>

Federal Rule of Civil Procedure 26(b)(1) "permits a party, subject to the limitations of Rule 26(b)(2)(C), to 'obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense....'" *In re Commodity Exch., Inc., Gold Futures & Options Trading Litig.*, No. 14-MC-2548 (VEC), 2021 WL 2481835, at *2 (S.D.N.Y. June 17, 2021) (quoting Fed. R. Civ. P. 26(b)(1)); *Mallinckrodt Chem. Works v. Goldman, Sachs & Co*., 58 F.R.D. 348, 353 (S.D.N.Y. 1973) ("[D]iscovery should be relevant where there is any possibility that the information sought may be relevant to the subject matter of the action.").

Parties seeking cover from discovery may avail themselves of a motion for a protective order under Rule 26(c), which affords protection for abusive or embarrassing discovery, providing that "[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending . . . The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue

16

burden or expense. . . ."  Fed. R. Civ. P. 26(c)(1); *see Gordon v. Target Corp.*, 318 F.R.D. 242,

246 (E.D.N.Y. 2016) ("[T]he touchstone for determining whether to issue a protective order

under Rule 26(c) lies, in the first instance, on a party's ability to establish good cause").

 The burden is on the party seeking issuance of the order to show "good cause" through

"particular and specific facts" as opposed to "conclusory assertions."  *Rofail v. United States*,

227 F.R.D. 53, 54–55 (E.D.N.Y. 2005); *McNamee v. Clemens*, No. 09 CV 1647 (SJ), 2014 WL

12775660, at *14 (E.D.N.Y. Jan. 30, 2014) (Under the Federal Rules, the party that resists

discovery has the burden of specifying to the court why the discovery is objectionable . . . [t]he

Court is not required to speculate as to the nature or basis of [the movant's] claims."); *In re Air

Crash Near Clarence Ctr., New York, on Feb. 12, 2009*, 277 F.R.D. 251, 254 (W.D.N.Y. 2011)

("Objections must clearly set forth the specifics of each objection and how that objection relates

to the discovery being demanded . . . [p]at, generic, boilerplate, and non-specific objections will

not suffice."). Specifically:

> A party opposing a discovery request cannot make conclusory allegations that a request is
> irrelevant, immaterial, unduly burdensome[,] or overly broad. Instead[,] the party
> resisting discovery must show specifically how each discovery request is irrelevant,
> immaterial, unduly burdensome or overly broad.

*Obiajulu v. City of Rochester, Dep't of L.*, 166 F.R.D. 293, 295 (W.D.N.Y. 1996) (internal

quotations omitted). "If the movant establishes good cause for protection, the court may balance

the countervailing interests to determine whether to exercise discretion and grant the order."  *Id.*

at 55.  "Because of the interest in broad discovery, the party opposing the discovery of relevant

information, whether through a privilege or protective order, bears the burden of showing that

based on the balance of interests the information should not be disclosed."  *Fowler-Washington

v. City of New York*, No. 19-CV-6590 (KAM)(JO), 2020 WL 5893817, at *3 (E.D.N.Y. Oct. 5,

2020) (internal quotation and citation omitted).

To this end, a protective order "may include a prohibition against the use of privileged information inadvertently produced in discovery." *Fuller v. Interview, Inc.*, No. 07 Civ. 5728(RJS)(DF), 2009 WL 3241542, at *7 (S.D.N.Y. Sep. 30, 2009) (granting a protective order against the use of privileged information inadvertently disclosed and directing documents to be destroyed).  A protective order should be granted to protect privileged information when Defendant's right to prepare a defense does not outweigh the need for secrecy.  *See id.*; *Sec. of Labor v. Superior Care*, 107 F.R.D. 395, 398 (E.D.N.Y. 1985) (granting a protective order because Defendant had other means to prepare for trial); *Galvin v. Hoblock*, No. 00 CIV. 6058 (DAB) (MHD), 2003 WL 22208370, at *7-8 (S.D.N.Y. Sept. 24, 2003) (granting, in part, a protective order in relation to the privileged documents because Defendant had not shown a compelling need to overcome the privilege).

Rule 26(b)(2)(C) additionally requires courts to limit "the frequency or extent of discovery" if it determines that it is "unreasonably cumulative or duplicative" or if "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action." Fed. R. Civ. P. 26(b)(2)(C)(i)–(ii). *See In re Agent Orange Prod. Liab. Litig.*, 517 F.3d 76, 103 (2d Cir. 2008) (While a "party must be afforded a meaningful opportunity to establish the facts necessary to support his claim," a "district court has wide latitude to determine the scope of discovery."). It is with these principles in mind that the Court considers Plaintiff's motion.

As previously mentioned, Plaintiff seeks a protective order to prevent disclosure of the identify of employee-informant witnesses 30 days before the anticipated trial in this case on the basis of informant's privilege, which protects information "tending to reveal the identifies of government informants." *See* ECF No. 74 at 1; *see also Reich v. Great Lakes Collection Bureau,*

*Inc.*, 172 F.R.D. 58, 60 (W.D.N.Y. 1997) (internal citations omitted) ("As to the informer's privilege, the privilege for communications by informers to the government is well established and its soundness cannot be questioned."). "There is no fixed rule with respect to disclosure of an informant's identity . . ." *Carbajal v. Village of Hempstead*, CV-02-4270(ADS)(ETB)., 2003 WL 23138447, at *2 (E.D.N.Y. Dec. 22, 2003). The party seeking the informant's identity bears the burden of establishing the need for such disclosure, and "must establish that the information sought is both relevant and essential to the presentation of his case on the merits, . . . and that the need for disclosure outweighs the need for secrecy." *Id.* (internal quotation and citation omitted). "Generally, the privilege applies to the informant's identity only and not the substance of the informant's communications, . . ." unless disclosure of the contents is likely to reveal the identity of an informer. *Id.* (quoting *Roviaro v. United States*, 353 U.S. 53, 60, 1 L. Ed. 2d 639, 77 S. Ct. 623 (1957)).

Courts have generally refused disclosure in cases arising under the FLSA. *Sec'y of Lab. v. Superior Care Inc.*, 107 F.R.D. 395, 397 (E.D.N.Y. 1985) (citing Weinstein & M. Berger, 2 *Weinstein's Evidence* ¶ 510[05] at 510-29; C. Wright & A. Miller, *Federal Practice & Procedure: Civil § 2019* n.77). Courts have found that the employee informer's identity is usually unrelated to the proof offered at trial, and that anonymity helps diffuse the fear of retaliation. *Id.*; *See also Dole v. Loc. 1942, Int'l Bd. of Elec. Workers*, *AFL-CIO*, 870 F.2d 368, 372 (7th Cir. 1989) ("[T]he government need not make a threshold showing that . . . retaliation is likely, because of the significant policy consideration behind the privilege, as well as the difficulty of such proof."). However, the privilege is not absolute, and a defendant's right to prepare a defense can outweigh the privilege when the Secretary seeks to introduce witnesses that the defendant did not have an opportunity to depose. *Superior Care*, 107 F.R.D. 395, 397.

Merely showing that the information sought would be of "some assistance to the party," is not enough to meet the burden. *Id.*  Disclosure is proper when an informant will testify, however, "the details of how and when that disclosure will occur, and the extent to which it will incorporate the substance of witness statements, are best left to the discretion of the district judge before whom [the] case will be tried." *Herman v. Crescent Pub. Grp., Inc.*, No. 00 Civ. 1665 SAS., 2000 WL 1371311, at *8 (S.D.N.Y. Sep. 21, 2000); *see also Martin v. New York City Transit Auth.*, 148 F.R.D. 56, 65 (E.D.N.Y. 1993).

Particularly, in an FLSA case, the need for secrecy is greater than the need for disclosure when Defendant has other means to prepare for trial. *See Herman*, 2000 WL 1371311, at *5; *Superior Care*, 107 F.R.D. at 397.  Disclosure may be proper where an informant is the only link between the evidence and a Defendant. *Carbajal*, 2003 WL 23138447, at *3-4; *see also Martin*, 148 F.R.D. at 64 (finding that disclosure was only proper in relation to the twelve informants, which Plaintiff used to support its motion for summary judgment, because Defendant would be deprived of the ability to dispute issues of fact when a motion is premised on an informant's statement).

Considering the history of this case, and the context under which the application is brought, the Court finds the identities of the employee-informant witnesses are exactly what the informant's privilege was designed to protect, and Defendants have not otherwise shown a compelling or legitimate need for the informants' names to be disclosed outweighing the government's interest in protecting their identities.  Indeed, Defendants have other means to defend themselves, including access to their own records, and had a full and fair opportunity throughout the discovery period to interview or depose any past or current employee – which they failed to take advantage of.  *See Superior Care*, 107 F.R.D. at 397; *Martin*, 148 F.R.D. at 65

20

(holding that there was no compelling need for disclosure because Defendant had other means to prepare for trial). Defendants' contentions that these individuals' identities need to be revealed immediately so that Defendants may "investigate" Plaintiff's retaliation claim – and that there is *no* risk of retaliation if their identities are revealed at this stage of the litigation – are also unavailing, and have been previously rejected by the Southern District:

> The Secretary is entitled to rely upon the government informant privilege to protect the identities of [present or former Crescent] employees, absent some showing that disclosure is necessary to enable Crescent to defend this action. In that regard, Crescent contends that it is being put to the task "of having to defend itself against unknown charges" because it does not know who was interviewed by DOL. Crescent further contends that any fear that Crescent might retaliate against its employees is speculative and unsubstantiated. There is no basis for Crescent's assertion that the charge in this case is somehow unclear. Indeed, the complaint plainly indicates that the Secretary is seeking to hold Crescent accountable for its retaliatory termination of one named employee: Ms. Perez.
>
> Moreover, the Secretary obviously has reason to be concerned that other witnesses might be intimidated by Crescent . . . if their names were prematurely disclosed. In fact, the very circumstances of Ms. Perez's termination permit the inference that Crescent may have retaliated against her. As the Fifth Circuit has noted, the threat of retaliation is far from remote or speculative even after an employee leaves the defendant's payroll.

*Herman*, No. 00 CIV. 1665 SAS, 2000 WL 1371311, at *6; *see also United States v. Jimenez*, 789 F.2d 167, 170 (2d Cir. 1986) (holding defendant did not meet its "heavy burden of showing that disclosure [of the confidential informant's identity]" was "essential to [its] defense.").

The Court does acknowledge however, Defendants' interests and needs in preparing for trial, and, therefore, taking into consideration Defendants' right to prepare their defense, and Plaintiff's "strong and legitimate interest in protecting confidential sources from premature identification[,]" the Court finds disclosure of employee-informant witnesses forty-five (45) days before the anticipated trial in this matter to be more than ample, and fair and reasonable for both parties under the circumstances. *Abuhamra*, 389 F.3d at 324. As Plaintiff notes, "courts in FLSA cases routinely order DOL to disclose employee-informant witnesses shortly before trial to

21

protect the informant's privilege—including in cases involving far more than the 31 employees here for whom DOL seeks back wages, and thus in which the task of trial preparation is far greater." *See* ECF No. 74 at 2-3 (collecting cases);[9] *see also* Fed. R. Civ. P. 26(a)(3)(B) ("Unless the court orders otherwise, disclosure[] [of trial witnesses] must be made at least 30 days before trial."); *Brennan v. Engineered Prod., Inc.*, 506 F.2d 299 (8th Cir. 1974) (noting courts in FLSA enforcement actions, may, in their discretion, require disclosure of names of prospective witnesses at a "reasonable" time before trial, and finding disclosure five to ten days before trial sufficient).

## <u>CONCLUSION</u>

For the reasons stated herein, Defendants' Motion to Re-Open Discovery (ECF No. 72) is **DENIED**, and Plaintiff's Motion for a Protective Order (ECF No. 74) is **GRANTED** *in part* and **DENIED** *in part*. Plaintiff is directed to disclose witnesses forty-five (45) days before the trial date, when set. All other dates and deadlines set by the undersigned on February 27, 2024, remain in place. (*See* ECF No. 71.)

Dated: Central Islip, New York
      April 19, 2024

                              **S O   O R D E R E D:**
                              /S/ *James M. Wicks*
                                JAMES M. WICKS
                       United States Magistrate Judge

---

[9] Plaintiff relies on the following case law to support her proposal: "*Su v. Innovative Design & Dev. LLC*, 2023 WL 7384409, at \*3 & \*11 (D.N.J. Nov. 8, 2023) (30 days before trial, in case with 128 employees); *Walsh v. Elder Res. Mgmt., Inc.*, 2022 WL 280947, at \*11 (W.D. Pa. Jan. 31, 2022) (30 days before trial, in case with 300 employees); *Perez v. El Tequila LLC*, 2014 WL 12652312, at \*2 (N.D. Okla. Dec. 11, 2014) (30 days before trial, in case with 175 employees); *Brock v. J.R. Sousa & Sons, Inc.*, 113 F.R.D. 545 (D. Mass. 1986) (10 days before trial, in case with 751 employees); *Donovan v. Giguere's Supermarket, Inc.*, 1981 WL 2328, at \*2 (D. Me. July 13, 1981) (10 days before trial, in case with 60 employees); *Sec'y of Labor v. Superior Care Inc*., 107 F.R.D. 395 (E.D.N.Y. 1985) (at time witness is introduced)." (*Id.*) The Court notes that Defendants do not provide any case law suggesting a 30–45-day time period before trial for witness disclosure would otherwise be unreasonable. *See generally*, ECF No. 77.